UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SENECA NATION OF INDIANS,

                              Plaintiff,

                                                                               **DECISION AND ORDER**
                                                                               **(Stay Pending Appeal)**
                     v.                                                                    10-CV-687A

DAVID PATERSON, Governor of the State of New
York, JAMIE WOODWARD, Acting Commissioner,
NYS Department of Taxation and Finance, WILLIAM
COMISKEY, Deputy Commissioner, Office of Tax Enforcement,
New York State Department of Taxation and Finance,
JOHN MELVILLE, Acting Superintendent, New York State Police,
each in his or her official capacity,

                              Defendants.

---

CAYUGA INDIAN NATION OF NEW YORK,

                            Plaintiff-Intervenor,

---

## INTRODUCTION

     The Seneca Nation of Indians ("Seneca Nation") commenced this action seeking to enjoin implementation of certain amendments to the New York State tax law relating to the taxation of cigarettes sold by reservation retailers. Along with the complaint, the Seneca Nation filed a motion for a preliminary injunction. The Cayuga Indian Nation of New York ("Cayuga Nation") was granted permission to intervene in the action and joined in the motion for a preliminary injunction.

     A preliminary injunction hearing was held on September 14 and 15, 2010. On September 23rd, this Court heard supplemental argument on the motion. In a separate

Decision and Order issued today, this Court denied the motion for a preliminary injunction upon finding that the plaintiffs had failed to show a likelihood of success on the merits of their claims.

The Nations have expressed their intent to appeal the denial of their motion to the United States Court of Appeals for the Second Circuit, which they have the right to do.  In light of the Court's adverse determination, they ask that this Court grant a stay pending appeal so as to prevent irreparable injury to the Nations pending an opportunity by the Second Circuit to fully consider their arguments.  The State of New York opposes any further stay of the new tax laws.

Absent a stay pending appeal, the new tax amendments will take effect immediately.  For the reasons stated below, the Court finds it necessary to further stay implementation of the new tax amendments pending appeal by the Nations.

## **DISCUSSION**[1]

Pursuant to Fed. R. Civ. P. 62(c), this Court has the authority to grant a stay pending appeal.  Rule 62(c) provides:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

---

[1] The background of this action is fully set forth in this Court's Decision and Order denying the preliminary injunction motion.  See Dkt. 87.  Familiarity with that Decision and Order is assumed.

Fed. R. Civ. P. 62(c).[2]  In determining whether to grant a stay pending appeal, this Court considers the following factors:

> (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected.

*LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir.1994) (internal quotations and citation omitted). "[T]he degree to which [one] factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *In re World Trade Center Disaster Site Litigation,* 503 F.3d 167, 170 (2d Cir. 2007)(internal quotations omitted).  In other words, the factors are viewed on a "sliding scale," and "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors."  See *Thapa v. Gonzales*, 460 F.3d 323, 334-35 (2d Cir. 2006).

It is important to recognize that the standard for granting a stay pending appeal is different than the standard required to obtain a preliminary injunction.  Plaintiffs' failure to demonstrate a likelihood of success on the merits of their claim was fatal to their motion for a preliminary injunction because such a showing is essential to obtaining that relief.  See *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010).  In contrast, "[a]s the standard makes clear, a grant of injunctive relief

---

[2]  The fact that an appeal has not yet been filed is of no consequence.  Where, as here, "there is reason to believe that an appeal will be taken, there is no reason why the [C]ourt should not make an order preserving the status quo during the expected appeal." See 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2904.

pending appeal does not depend solely or even primarily on a consideration of the merits." *LaRouche,* 20 F.3d at 72.  To obtain a stay pending appeal, "the movant need not always show a 'probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* (internal quotations omitted).  Upon consideration of the four stay factors, the Court finds that a stay pending appeal should be granted.

As to the first factor, this Court has little difficulty finding that the Nations will suffer irreparable injury absent a stay.  An irreparable harm is a harm for which "a monetary award cannot be adequate." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).  To satisfy the irreparable harm requirement, a moving party must show that absent injunctive relief, it will suffer a harm that cannot be remedied by damages.  The movant must also show that injury is "actual and imminent" and not "remote or speculative." *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007).

The Nations assert that, without injunctive relief, they will suffer imminent and irreparable harm to their right of tribal sovereignty.  Where, as here, enforcement of a statute or regulation threatens to infringe upon a tribe's right of sovereignty, federal courts have found the irreparable harm requirement satisfied.  *See e.g. Prairie band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (finding irreparable injury where state's conduct created the "prospect of significant interference with [tribal] self-government"); *Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma*, 874 F.2d

709, 716 (10th Cir. 1989) (finding irreparable injury where threatened loss of revenues and jobs created the "prospect of significant interference with [tribal] self-government"); *Winnebago Tribe of Nebraska v. Stovall*, 216 F. Supp. 2d 1226, 1233 (D. Kan. 2002) (finding irreparable injury standard satisfied where Kansas's attempt to tax Indian nation would result in loss of revenues and resulting inability to fund tribal government programs).

The tax law amendments will almost certainly have an adverse impact upon the Nations' existing tobacco economies. The amendments will curtail the Nations' existing tobacco business with nonmembers who, now unable to purchase tax-free cigarettes from the tribe, will likely go elsewhere to obtain their cigarettes. If reservation tobacco retailers are unable to sell their products, many retailers will lay off employees or close their businesses. Approximately 3,000 people are currently employed by the Seneca Nation's 172 tobacco retailers. It is not clear how many are employed by the Cayuga Nation's two shops, but that Nation asserts that "[p]rofits from cigarette sales [from its two stores] represent virtually the only source of revenue for the Nation." *See* Cayuga Nation Compl., Dkt. 30, at ¶ 16. The Cayuga Nation further asserts that "without such revenues, the Nation will struggle to exist as a financially viable entity." *Id.* The potential loss of an entire economy that currently supports many of each Nation's members and services is a harm that cannot be measured by monetary damages alone. The Court recognizes that the "market exist[s] in the first place only because of the claimed exemption from [state] taxes," *Washington v. Confederated Tribes of Colville*, 447 U.S. 134, 157 (1980), and that the State has the right to impose a tax

scheme that eliminates the false tax exemption. Nevertheless, if the Second Circuit were to disagree with this Court's ruling and find that the burden imposed upon the Nations under the new tax scheme is constitutionally impermissible, it may be too late to undo the harm suffered by the Nations' existing tobacco businesses in the interim. Accordingly, the threat of irreparable harm favors granting a stay pending appeal.

As to the second factor, the Court does not believe that the State of New York will suffer substantial injury if the stay is issued. True, the State of New York will suffer some injury in the form of lost tax revenue. Each day that the Nations continue to sell cigarettes to nonmembers without collecting taxes, the State loses tax revenue from those sales. However, as was made clear in the Court of Appeals' decision in *Cayuga Indian Nation v. Gould,* 14 N.Y.3d 614 (2010), New York voluntarily chose to forebear collection of cigarette taxes from Indian retailers for many years. It was only after the State's budget crisis of 2009-2010 that the State chose to dramatically shift its policy from one of forbearance to one of enforcement. In light of the State's lengthy prior history of forbearance, the Court does not believe that the minimal, additional delay pending appeal will cause substantial injury, particularly when weighed against the potential irreparable harm to the Nations' tobacco economies. Accordingly, this factor weighs in favor of granting a stay pending appeal.

As to the third factor, for the reasons stated in this Court's Decision and Order denying the preliminary injunction motion, the Court finds that the Nations have failed to demonstrate a substantial possibility of success on appeal. However, it cannot be said that there is *no possibility* of success on appeal. Although some aspects of the new tax amendments are authorized by prior Supreme Court precedent (for example, the

burden of tax collection and the requirement of prepaid tax stamps), others have not. It remains an open question as to whether the Second Circuit will agree with this Court's determination that the prior approval system imposes only a minimal burden. The Nations have raised serious legal questions going to the merits of their claims. Because some aspects of the new tax amendments are unprecedented, there is some possibility of success on appeal.

Finally, the Court finds that a stay pending appeal is in the public interest. The State of New York and the Nations have been at odds over this issue for decades and there is strong public support for both sides. Shortly before the amendments were to be implemented, parties on both sides publicly spoke about the potential for violence. Given the passionate sentiments involved, the Court finds that granting a stay pending appeal is in the public interest because it will simply preserve the status quo while a higher court considers the merits of the plaintiffs' claims. *See Connecticut Hosp. Ass'n v. O'Neill*, 863 F.Supp. 59 (D. Conn. 1994) ("In ruling on a motion pursuant Rule 62(c), the district court's objective is to preserve the status quo during the pendency of an appeal."). The Nations simply want the opportunity to have all of their arguments fully considered before they are required to engage in activity that they view as an affront to their tribal sovereignty. Out of respect for the sovereign status of those Nations, the Court finds it prudent to delay implementation so as to afford them the opportunity to do so. This Court is confident that both Nations will abide by whatever ruling the Second Circuit issues.

There is an additional benefit to be gained by staying implementation of the tax law amendments pending appeal. As was made clear in this Court's preliminary

injunction ruling, as soon as the prior approval system takes effect, free market forces will control and tax-exempt cigarettes will become a commodity in high demand and low supply.  Although implementation of the prior approval system does not require that the Nation take any action to ensure that its members will have adequate access to that limited commodity, the Nations may find it prudent to do so.  Granting a stay pending appeal will provide the Nations with additional time to consider whether they want to create a tax-exempt cigarette allocation scheme that would take effect if their appeal was unsuccessful.  They may also want to create a plan for divesting themselves of untaxed cigarettes so as to avoid potential criminal prosecution.  It is in the best interest of the Nations and the State to grant additional time for the Nations to assess what course of action to take next after having had time to review and analyze this Court's reasoning as to why the tax regulations do not impose an undue burden on their sovereign rights.

## **CONCLUSION**

For the reasons stated, the Court hereby grants a stay of enforcement of the New York tax law amendments pending appeal.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: October 14, 2010